UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| TAYLOR BRANDS, LLC | ) | |
| | ) | |
| V. | ) | NO. 2:08-CV-325 |
| | ) | |
| GB II CORPORATION d/b/a | ) | |
| Columbia River Knife and Tool Co. | ) | |

**MEMORANDUM AND ORDER**

Each of these parties manufactures knives, including spring-assisted opening knives. The plaintiff, Taylor Brands, LLC ("Taylor") alleges that certain spring-assisted opening knives sold by the defendant, GB II Corporation d/b/a Columbia River Knife and Tool Co. ("CRKT"), infringes Patent No. 6,651,344 B2 (the '344 Patent") held by Taylor.

CRKT has filed a motion for partial summary judgment, (Doc. 23), in which it requests this court to decide whether any of its folding knives that are the subject of the motion infringe upon the '344 Patent.[1]

The court heard the attorney's argument on October 26, 2009, and the court has read their respective briefs.

The claims of the '344 Patent are as follows:

---

[1]The knives sold by CRKT which are the subject of this motion bear the following Model Nos.: 1030TS, 1013A, 1000A, 1090, 1093, 1096B, 1141, 1151, 2903, 6820, 6825, 6850, 6860, 7080M, 7120, 7450, M4-03, 5015, 5020, 5021, 1070KS, and 1080.

**1**. A foldable knife structure comprised of:

a handle, with the said handle having a receiving slot formed therein;

a blade pivotably conjoined to a position adjacent to one end of the said handle such that the said blade is capable of being rotated around the position of pivotable conjoinment and folded into the said receiving slot or drawn out from the said receiving slot and extended outside the said handle;

a set block situated at one side of the said blade adjacent to the pivotable conjoinment position of the said handle, with the said set block having a detent notch in the circumferential edge at the confluence of its maximum outer diameter and minimum outer diameter such that when the said blade is drawn out of and extended from the said receiving slot, the said detent notch faces the opposing end of the said receiving slot;

a spring having one end inside the said receiving slot and situated near the other end of the said handle, with the opposite extremity of the said spring extending to a position on the said set block such that when the said blade is folded inside the said receiving slot, the opposite extremity of the said spring is against the maximum outer diameter, and the torsion produced causes the said set block to rotate the said blade towards the interior of the said receiving slot, and during the process of drawing the said blade out of the said receiving slot, the torsion produced causes the said set block to rotate the said blade towards the exterior of the said receiving slot and subjects the said blade to the functional force of the said spring such that it automatically bounds out of the said receiving slot.

**2**. The foldable knife structure as mentioned in claim **1**, wherein the said spring is of a curve shape before the said spring is in the flexured state, and the distance between two extremities of the said spring and the ends of the said receiving slot is shorter than the distance between center portion of the said spring and the ends of the said receiving slot.

**3**. The foldable knife structure as mentioned in claim **1**, wherein center portion of the said spring is against one side of the said receiving slot inside the said handle while the said spring is not in the flexured state.

**4.** The foldable knife structure as mentioned in claim **1**, wherein the said foldable knife structure further comprises a locking component internally disposed in the said receiving slot; the said locking component possesses elasticity and is oriented towards the center contour of the said receiving slot such that when the said blade is extended from the said receiving slot, the said locking component is postured against the end of the said blade nearest to the position of pivotable conjoinment, with the said blade thereby locked in place by
2

the said locking component to the extent that the said blade cannot be rotated back into the said receiving slot.

  5. The foldable knife structure as mentioned in claim **1**, wherein the said foldable knife structure further comprises a limiting component internally disposed in the said receiving slot; such that when the said blade is extended from the said receiving slot, the said limiting component is situated against another side at the end of the said blade nearest to the position of pivotable conjoinment, with the said blade kept stationary by the said limiting component to the extent that it cannot be further rotated.

  6. The foldable knife structure as mentioned in claim **1**, wherein the said handle consists of a mutually assembled upper shell and a lower shell and a plurality of fastening components that fasten the said upper and lower shells together, thereby forming the said receiving slot.

  7. The foldable knife structure as mentioned in claim **1**, wherein the said set block is secured onto the said blade, enabling the said blade and the said set block being conjoined at one end of the said handle by utilizing a pivot shaft and thereby allowing the said blade and the said set block to rotate around the said pivot shaft as being drawn out of the said receiving slot or folded into the said receiving slot.

  8. The foldable knife structure as mentioned in claim **1**, wherein the said set block and the said blade are made into a single structural entity, and are conjoined at one end of the said handle by utilizing a pivot shaft, thereby allowing the said blade and the said set block to rotate around the said pivot shaft as being drawn out of the said receiving slot or folded into the said receiving slot.

  9. The foldable knife structure as mentioned in claim **1**, wherein a toggling rod is disposed on the exposed portion of the said blade when the said blade is in a folded state within the said receiving slot such that when the said blade is folded in the said receiving slot, pressing the said toggling rod results in the rotation of the said blade.

  A patent is an apt illustration of the truth of the old saying that "a picture is worth a thousand words." Notwithstanding the foregoing adage, the court will now attempt to put into words only what a series of photographs better illustrate, and only what an actual observation of the parties' knives illustrates even better.

  A spring assisted opening knife is, first and foremost, a folding knife, i.e., a "pocket

3

knife," albeit usually a rather large pocket knife. Inside the handle of the knife is a long piece of thin metal, the spring. That spring is in constant contact with some portion of the "rear" of the blade, i.e., that portion of the blade that is attached to the handle by a pivot pin or axle. When a button or lever is pushed or depressed, the pressure of the spring at the rear or pivot end of the blade forces the blade to open; hence, "spring-assisted" opening blade. The attorneys for the parties also talked of spring-assisted *closing* blades, and that very well may be so, but the spring-assist to closing is felt much less than it is with respect to the *opening* aspect of the blade. In any event, the issue presented by this patent infringement suit and the motion for summary judgment focuses upon that portion of the rear or pivot end of the blade against which the spring impinges and upon which it exerts its opening force.

Taylor's knives have a "set block" that is situated at the rear of the blade, *but on the side*, with which the spring makes contact.[2] The set block is an irregularly shaped piece of metal, somewhat round, with a "detent" notch cut into it.[3] The irregular shape of the set block and the notch allows the spring to exert varying degrees of force as the blade swings open (or closed). CRKT's subject knives have no set block.[4] The rear edge of the blade itself is irregularly configured, and it is against that surface that the spring makes contact. The spring exerts a different amount of force depending upon the position of the blade at any given instant. And thus the dispute: CRKT argues that there is neither any literal

---

[2]Claim 1.

[3] *Id*.

[4]Exhibits 2 - 23 to Bremer's Declaration, Doc. 26.

4

infringement by its knives listed in footnote 1, nor any infringement under the doctrine of equivalents.

A motion for summary judgment potentially is as available in a patent case as in any other.[5] Here, CRKT, as the movant, bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact and that it is entitled to summary judgment as a matter of law.[6] It can meet this burden by either providing evidence that negates an essential element of Taylor's case, or by showing there is no material issue of fact and that Taylor will be unable to prove an essential element of its case.[7]

The resolution of a patent infringement claim involves a two-step analysis. First, the court, as a matter of law, must construe the patent claims. Second, the trier of fact must determine whether the accused product contains each limitation of the claims thus construed, either literally or under the doctrine of equivalents.[8] Since CRKT has filed a motion for summary judgment, this court must determine whether there is any dispute of fact with respect to CRKT's accused knives and Taylor's claims as construed by the court.

## *CLAIM CONSTRUCTION*

The words of a claim usually are given their ordinary and customary meaning as

---

[5]*Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605 (Fed. Cir. 1999).

[6]F.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Vivid Techs., Inc. v. Amer. Science & Eng.'g, Inc*., 200 F.3d 795, 806 (Fed. Cir. 1999).

[8]*Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996).

5

understood by a person of ordinary skill in the field of the invention.[9] In addition to considering the specifications of the patent in construing the claims, the court also may consider extrinsic evidence, such as dictionaries. *Phillips*, 415 F.3d at 1313; 1322-23. Of the two types of evidence, intrinsic and extrinsic, the former is the most important.[10]

## *LITERAL INFRINGEMENT*

However else one might choose to define "set block" under claim 1 of the '344 Patent, it is a protruding piece of metal on the side of the tang or rear end of the blade; it is not the rear edge of the blade itself. The location of the set block "at the side" of the blade is a critical distinction between claim 1 of the patent and CRKT's knives.

The set block is separate from the blade itself. It has a hole roughly in its center which goes over the pin or axle upon which the blade itself pivots. It also has a small pin in another location which fits into a hole in the blade, and which serves to keep the set block from merely spinning on the blade's axle from the force of the spring. In other words, this pin makes the set block immovable in relation to the blade. The set block becomes a "single structural entity" (claim 8) with the blade only by virtue of this small pin which prevents it from spinning freely and thereby negating the force of the spring. "Single structural entity" cannot be equated with "one piece" or "single piece." Each of the subject knives manufactured by CRKT utilizes the rear edge of the blade as the contact site for the spring, and has no separate set block. To be sure, the set block on Taylor's knife *could be*

---

[9]*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005) (*en banc*).

[10]*Interactive Gift Exp. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

6

permanently fused, i.e., welded, onto the blade, thereby becoming one with the blade. But it is not; it is a separate part, as described by claim 7.

The detailed description of the set block's shape or configuration is another significant difference between claim 1 of the '344 Patent and the design of CRKT's knives. In reality, the detailed description of the set block further confirms that the set block is a separate "thing" at the side of the blade, irrespective that it and the blade are described as a single structural entity.

There is no literal infringement.

## *DOCTRINE OF EQUIVALENTS*

If there is no literal infringement of a patent, but the difference between the claims and the accused device are "insubstantial," the device can be held as infringing under the doctrine of equivalents.[11]

> Equivalency may be found if the differences between that which is claimed and its embodiment in the accused composition are insubstantial. The usual test of the substantiality of the differences is whether the element in the accused composition performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed element.

*Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1309 (Fed. Cir. 2000).

> The determination of whether the accused product is substantially the same as the claimed invention is a question of fact.

*Helton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1521 (Fed. Cir. 1995).

Notwithstanding that whether an accused device infringes under the doctrine of

---

[11]*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

equivalents is a question of fact, summary judgment is appropriate if no reasonable juror could conclude from the facts presented that there has been an infringement under the doctrine of equivalents:

> A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device. A claim element is equivalently present in an accused device if only "insubstantial differences" distinguish the missing claim element from the corresponding aspects of the accused device. Although equivalents is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalents.

*Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

Taylor argues that the CRKT knife is "constructed in substantially the same manner, operates in substantially the same way and produces substantially the same result as [Taylor's] knife to provide a classical circumstance of an infringement under the doctrine of equivalents."

There are restrictions, however, on the application of the doctrine. First, there is the "all-elements" or, as the Federal Circuit prefers, the "all-limitations" rule: "It is important to insure that the application of the doctrine, even as to an individual [limitation] is not allowed such broad play as to effectively eliminate that [limitation] in its entirety."[12] The court must "focus on an individual [limitation] and [be especially vigilant] against allowing the concept of equivalence to eliminate completely any such [limitations]." *Id.*, at 40.

---

[12]*Warner-Jenkinson Company, Inc. v. Hilpon Davis Chemical Co.*, 520 U.S. 17, 29 (1997).

8

Second, there is the "specific exclusion principle," which provides that a patentee cannot use the doctrine of equivalents to reclaim subject matter which he clearly excluded. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001. Under the specific exclusion principle, a patent may specifically exclude a proposed equivalent from the scope of the claimed invention either implicitly or explicitly, *see, Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1186 (Fed. Cir. 2000), ("It would defy logic to conclude that a minority - the very anthesis of a majority - could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.")

Under the all-limitations rule, application of the doctrine of equivalents would eliminate the claim requirement that there be a set block situated "at one side of" the blade. In the same vein, notwithstanding that the blade and set block may be a single structural entity, it is indisputable that the set block is a *separate part*. To equate the rear edge of the blade itself with a set block which is (1) a separate part, and (2) which is situated on the side of the blade violates the all-limitations rule.

Likewise, the specific exclusion principle bars application of the doctrine of equivalents. The words "on the side" exclude anything *not* on the side, i.e., on the rear edge. Taylor submitted the affidavit of Walter Collins[13] in support of its argument that the doctrine of equivalents applies. The sum and substance of Mr. Collins' opinion is that the rear edge

---

[13]Document 40, Ex. 3.

of a blade is equivalent to Taylor's "set block":

> 30. Whether the set block is a separate component secured to either an outermost surface or a surface indented from an outermost surface of the blade, within or without the envelope of the blade, or a component formed integrally with a side surface of the blade indented from an outermost surface of the blade, within or without the envelope of the blade, such components are structural and functional equivalents.
>
> 31. The set block and blade of the CRKT Knife is a single structural entity within the meaning of Claim 8 of the '344 Patent.
>
> 32. The CRKT Knife includes each of the elements recited in Claims 1 and 4 through 8 of the '344 Patent.
>
> 33. The CRKT Knife and the knife claimed in the '344 Patent are constructed in substantially the same manner, operate in substantially the same way and produce substantially the same results.[14]

With all due respect to Mr. Collins, he strains rather badly to create a set block on the rear edge of CRKT's knives, when in fact there is none. The rear edge of the blade, although sinuously curved to provide for the required varying forces to be applied by the spring, does not substantially equate with Taylor's set block. The rear edge of CRKT's blade, although it performs the same function as Taylor's set block, it does not perform it in the same way. There is no infringement under the doctrine of equivalents.

## *CONCLUSION*

The court holds that there is no infringement of the '344 Patent by those knives sold by CRKT bearing the following model numbers: 1030TS, 1013A, 1000A, 1090, 1093, 1096B, 1141, 1151, 2903, 6820, 6825, 6850, 6860, 7080M, 7120, 7450, M4-03, 5015, 5020, 5021, 1070KS,

---

[14]Doc. 40, Ex. 3, p. 5.

and 1080. CRKT's motion for partial summary judgment (Doc. 23) is therefore GRANTED.

SO ORDERED:

s/ Dennis H. Inman  
United States Magistrate Judge

11

Case 2:08-cv-00325   Document 73   Filed 11/19/09   Page 11 of 11   PageID #: 936

and 1080. CRKT's motion for partial summary judgment (Doc. 23) is therefore GRANTED.

SO ORDERED:

s/ Dennis H. Inman
United States Magistrate Judge

and 1080. CRKT's motion for partial summary judgment (Doc. 23) is therefore GRANTED.

SO ORDERED:

s/ Dennis H. Inman
United States Magistrate Judge